# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| APRESS MEDIA, LLC; CENGAGE LEARNING, INC.; ELSEVIER INC.; HACHETTE BOOK GROUP, INC.; HARPERCOLLINS PUBLISHERS LLC; JOHN WILEY & SONS, INC.; MCGRAW HILL LLC; BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC D/B/A MACMILLAN LEARNING; MACMILLAN PUBLISHING GROUP, LLC; PEARSON EDUCATION, INC.; PENGUIN RANDOM HOUSE LLC; SIMON AND SCHUSTER, LLC; AND TAYLOR & FRANCIS GROUP LLC,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br><br>ANNA'S ARCHIVE and DOES 1-10,<br><br>　　　　　Defendants. | **No. 1:26-cv-01850 (JSR)**<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT** |

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1

BACKGROUND .................................................................................................................... 1

    I.    Factual Background ...................................................................................................... 1

    II.   Procedural History ...................................................................................................... 3

LEGAL STANDARD................................................................................................................ 4

ARGUMENT............................................................................................................................ 6

    I.    The Court Should Enter a Default Judgment Against All Defendants .............................. 6

    II.   Plaintiffs' Allegations Establish Defendants' Liability ...................................................... 7

    III.   The Court Should Award Maximum Statutory Damages................................................. 8

      A.   The Defendants' Infringement Is Willful ........................................................... 8

      B.   All Six Factors Favor an Award of Maximum Statutory Damages............................... 9

    IV.   The Court Should Enter Plaintiffs' Proposed Permanent Injunction........................... 13

CONCLUSION...................................................................................................................... 14

# TABLE OF AUTHORITIES

**CASES**

*All-Star Marketing Grp., LLC v. Media Brands Co., Ltd.,*

 775 F. Supp. 2d 613 (S.D.N.Y. 2011). ...................................................................................... 6, 9

*Bartz v. Anthropic PBC,*

 787 F. Supp. 3d 1007 (N.D. Cal. 2025). .................................................................................... 10

*Broadcast Music, Inc. v. Prana Hospitality, Inc.,*

 158 F. Supp. 3d 184 (S.D.N.Y. 2016). ...................................................................................... 14

*Bryant v. Media Right Productions, Inc.,*

 603 F.3d 135 (2d Cir. 2010)........................................................................................................ 9

*Cengage Learning, Inc. v. Bhargava,*

 2017 WL 9802833 (S.D.N.Y. Aug. 22, 2017).......................................................................... 12

*Cengage Learning, Inc. v. Nguyen,*

 2022 WL 18231654 (S.D.N.Y. Nov. 21, 2022)................................................................. *passim*

*City of New York v. Mickalis Pawn Shop, LLC,*

 645 F.3d 114 (2d Cir. 2011). ....................................................................................................... 5

*CKR Law LLP v. Anderson Invs. Int'l, LLC,*

 544 F. Supp. 3d 474 (S.D.N.Y. 2021). .................................................................................... 4, 6

*eBay Inc. v. MercExchange, LLC,*

 547 U.S. 388 (2006). ................................................................................................................. 13

*Fedorova v. DML News & Ent., Inc.,*

 2024 WL 5119108 (E.D.N.Y. Oct. 10, 2024)............................................................................. 5

*G&G Closed Cir. Events, LLC v. Jimenez,*

 2021 WL 11586165 (S.D.N.Y. Nov. 12, 2021). ......................................................................... 7

*Hachette Book Grp., Inc. v Internet Archive*,

    115 F.4th 163 (2d Cir. 2024). ........................................................................................... 11

*Hollander Glass Tex., Inc. v. Rosen-Paramount Glass Co.*,

    291 F. Supp. 3d 554 (S.D.N.Y. 2018)................................................................................. 12

*Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*,

    826 F. Supp. 2d 619 (S.D.N.Y. 2011). ......................................................................... 11, 13

*Kadrey v. Meta Platforms, Inc.*,

    788 F. Supp. 3d 1026 (N.D. Cal. Jun. 25, 2025)................................................................ 10

*Kelly Toys Holdings, LLC v. alialialiLL Store*,

    606 F. Supp. 3d 32 (S.D.N.Y. 2022). .................................................................................. 6

*Malletier v. Carducci Leather Fashions, Inc.*,

    648 F. Supp. 2d 501 (S.D.N.Y. 2009)................................................................................... 9

*Nazemian v. NVIDIA Corp.*,

    2025 WL 3485154 (N.D. Cal. Dec. 4, 2025)...................................................................... 10

*Pearson  Educ.,  Inc.  v.  Najji*,

    2024 WL 4350467 (S.D.N.Y. Feb. 13, 2024)................................................................. 11, 13

*Shah v. N.Y. State Dep't of Civil Serv.*, .............................................................................................

    168 F.3d 610, (2d Cir. 1999). ............................................................................................... 5

*Stokes v. MilkChocolateNYC LLC*,

    681 F. Supp. 3d 226, (S.D.N.Y. 2023). ...................................................................... 5, 9, 10

*UMG Recordings, Inc. v. Escape Media Grp., Inc.*,

    2014 WL 5089743 (S.D.N.Y. Sep. 29, 2014)...................................................................... 7

*UMG Recordings, Inc. v. MP3.com, Inc.*,

    2000 WL 1262568 (S.D.N.Y. Sep. 6, 2000)....................................................................... 8

*Vermont Teddy Bear Co. v. 1-800 Beargram Co.*,

    373 F.3d 241 (2d Cir. 2004). ............................................................................................... 5

*WowWee Group Ltd. v. Meirly*,

 2019 WL 1375470 (S.D.N.Y. Mar. 27, 2019). ....................................................................... 5

*WPIX, Inc. v. ivi, Inc.*,

 691 F.3d 275 (2d Cir. 2012). ..................................................................................... 14

*WPIX, Inc. v. ivi, Inc.*,

 765 F. Supp. 2d 594 (S.D.N.Y. 2011). .......................................................................... 14

*Yurman Design, Inc. v. PAJ, Inc.*,

 262 F.3d 101 (2d Cir. 2001). ....................................................................................... 7

**STATUTES**

17 U.S.C.§ 504 ............................................................................................................... 8

17 U.S.C.§412 ................................................................................................................ 8

17 U.S.C.§502 ............................................................................................................... 13

**RULES**

Fed. R. Civ. P. 55 ........................................................................................................... 4

Pursuant to Rule 55 of the Federal Rules of Civil Procedure and Local Civil Rule 55.2, Plaintiffs Apress Media, LLC; Cengage Learning, Inc.; Elsevier Inc.; Hachette Book Group, Inc.; HarperCollins Publishers LLC; John Wiley & Sons, Inc.; McGraw Hill LLC; Bedford, Freeman & Worth Publishing Group, LLC d/b/a Macmillan Learning; Macmillan Publishing Group, LLC d/b/a Macmillan Publishers; Pearson Education, Inc.; Penguin Random House LLC; Simon and Schuster, LLC; and Taylor & Francis Group LLC (collectively, "Plaintiffs"), by and through their undersigned counsel of record, submit this memorandum of law in support of their Motion for Default Judgment against Anna's Archive and Does 1-10 ("Defendants").

## INTRODUCTION

Defendant Annas Archive is a Notorious Pirate Site whose sole business is the distribution of protected content in violation of the rights of Plaintiffs and other copyright owners. Defendants have failed to appear in response to the Summons and Complaint and the Clerk has already issued a Certificate of Default. This case presents a clear record justifying entry of a default judgment, an award of maximum statutory damages, and a permanent injunction, just as this Court ordered in the related *Atlantic Recording Corp. v. Anna's Archive*, Case No. 1:26-cv-00002-JSR (S.D.N.Y.) (hereinafter "*Atlantic*"). In some ways this matter presents an even more compelling case because Anna's Archive is first and foremost a site for the distribution of textual material such as that published by Plaintiffs. The 130 Works in Suit on which Plaintiffs have sued represent just a tiny fraction of Plaintiffs' works that Defendants have infringed and more are added each day. This Court should award the relief sought by Plaintiffs.

## BACKGROUND

### I.    Factual Background

Plaintiffs are some of the leading publishers of books and journals in the United States. Working closely with their authors, Plaintiffs source, develop, edit, publish, reproduce, market, and

distribute tens of thousands of literary works per year, across the full spectrum of genres and topics and through a variety of formats, access, and delivery models. Plaintiffs' Complaint, ECF No. 6 (hereinafter "Compl.") ¶ 8. Anna's Archive is a Notorious Pirate Site that reproduces and distributes works of authorship owned by others to users for a profit, despite no authorization from or compensation to copyright owners. *Id.* ¶ 40.

Defendants operate Anna's Archive through a number of websites registered around the world (the "Websites"). Although several sites have been suspended in response to court orders,[1] including this Court's order in *Atlantic*, Defendants simply register new sites as existing ones come down. Currently Defendants operate annas-archive.gl, annas-archive.pk, and annas-archive.gd (the "Websites"), all of which are available in the United States. The ".gl" top-level domain is reserved for Greenland, ".pk" for Pakistan, and ".gd" for Grenada. Defendants anonymously registered these Websites using various private, foreign domain registrars. *Id.* ¶ 43.

Despite purporting to operate as a non-profit enterprise, Defendants profit from their infringing activities. Compl. ¶ 22. In exchange for their services, Defendants solicit users to "donate" money using untraceable methods such as gift cards or cryptocurrency. *Id.* ¶ 51. But these "donations" are in reality simple payments that users make for increased download speeds to more quickly access illegally obtained copyrighted works. *Id.*

The scale of Defendants' infringement is staggering. Through its various websites, Anna's Archive hosts tens of millions of books and papers, many of which are owned or controlled by Plaintiffs and include each of the 130 works listed in Exhibit A to the Complaint ("Works in Suit"). Defendants' infringement is ongoing. When the plaintiffs in *Atlantic* filed their complaint on December 29, 2025, Defendants purported to host over 61.3 million books and 95.5 million papers.

---

[1] Shortly after the *Atlantic* Order was entered on January 21, 2025, the ".org," ".pm," ".in," and ".se" domains ceased operation. More recently, ".li" and ".vg" ceased functioning while new domains were added.

When the Plaintiffs filed their Complaint on March 6, 2026, Defendants had added over 2 million books and 100,000 papers. As of the filing of this Motion, those numbers have risen to 64.4 million books and 95.68 million papers.[2] Declaration of Keith Howell in Support of Plaintiffs' Motion for Default Judgment (hereinafter "Howell Decl.") ¶ 10. Given the breadth of Defendants' infringement, the 130 Works in Suit represent just the tip of the iceberg of Plaintiffs' works infringed by Defendants.

Defendants know their operations are unlawful, having publicly acknowledged that they "deliberately violate[s] the copyright law in most countries." Compl. ¶ 3. In light of this reality, Defendants' operators intentionally remain anonymous and take steps to conceal their identities so as to avoid the "high risk of being arrested" and facing "decades of prison time." *Id.* ¶ 54.

Defendants' actions have caused and continue to cause substantial harm to Plaintiffs. Defendants divert revenue from Plaintiffs, at a scale made worse by their use of the viral BitTorrent protocol; undercut the existing and potential markets for Plaintiffs' works; and deprive Plaintiffs of control over the exploitation of their creative works. Compl. ¶¶ 57-61. Beyond that, Anna's Archive has become one of the primary sources of literary works on which AI companies have trained their large language models. This enterprise-level piracy has exponentially magnified the harm Defendants' infringing acts have caused Plaintiffs.

## II.    Procedural History

Plaintiffs commenced this action against Defendants on March 6, 2026, ECF No. 1 (refiled March 9, 2026, ECF No. 6), alleging one count of direct copyright infringement, for damages and injunctive relief. *Id.* ¶¶ 62-73 & Prayer for Relief. Plaintiffs filed the case as related to *Atlantic*, ECF No. 8, which the Court accepted. Despite Defendants' anonymity, Plaintiffs' research enabled them to identify ways to serve Defendants via electronic means. Accordingly, on April 7, 2026, this

---

[2] *Homepage*, ANNA'S ARCHIVE, https://annas-archive.gl/ (last visited May 5, 2026).

Court granted Plaintiffs' Motion to Serve Defendants by Electronic Means, ECF No. 11, for the reasons stated in the Motion. *See* ECF No. 15. On April 7, 2026, Plaintiffs' counsel served Defendants with copies of the Summons and Complaint pursuant to the Order on Plaintiffs' Motion to Serve Defendants by Electronic Means and duly filed a Proof of Service. ECF No. 16. Counsel did not receive any bounce-backs from these emails and Plaintiffs believe service was effective. Howell Decl. ¶ 5.

Pursuant to the Court's Order on Plaintiffs' Motion to Serve Defendants by Electronic Means, Defendants' deadline to answer or otherwise respond to the Complaint was April 28, 2026. ECF No. 15. Defendants did not file any response to the Complaint by the deadline. As of the date of this Motion, Defendants have not appeared or participated in this action in any way. Howell Decl. ¶ 8. Accordingly, on April 30, 2026, Plaintiffs filed a Request for a Clerk's Certificate of Default, ECF No. 17, which the Clerk issued on May 1, 2026, ECF No. 19.

Plaintiffs now seek entry of a default judgment for Defendants' failure to respond to the Complaint or defend this action. Defendants' blatant and willful disregard for Plaintiffs' rights and the Court's authority warrants imposition of statutory damages against Defendants for copyright infringement in the amount of $1,500,000 for each Plaintiff for a total of $19,500,000, as well as permanent injunctive relief.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 55 sets forth the procedure for issuing a default judgment against a defendant who fails to plead or otherwise defend the action. This is a two-step process. First, upon an application by the plaintiff, the Clerk will issue a certificate of default. Fed. R. Civ. P. 55(a); *see CKR Law LLP v. Anderson Invs. Int'l, LLC*, 544 F. Supp. 3d 474, 482-83 (S.D.N.Y. 2021) (Rakoff, J.). Entry of default "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *City of New York v. Mickalis Pawn*

4

*Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). As discussed above, the Clerk has already entered a Certificate of Default in this case.

The second step, specified by Fed. R. Civ. P. 55(b), provides for entry of a default judgment, either by the Clerk if the plaintiff's claim is for a sum certain or by the Court if it is not. The order "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c)." *Id.* (quotations and citations omitted). The plaintiff is not entitled to a default judgment as a matter of right; "the entry of a default judgment is entrusted to the sound judicial discretion of the court." *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999). In determining whether to grant the motion, the court will consider the same factors that apply to a motion to set aside the entry of default, specifically: "(1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Stokes v. MilkChocolateNYC LLC*, 681 F. Supp. 3d 226, 236 (S.D.N.Y. 2023). As set forth below, the record fully supports entering default judgment against Defendants.

If the Court is satified that the standards for default are met, the Court will then assess whether the plaintiff has sufficiently pled the allegations establishing liability. *Fedorova v. DML News & Ent., Inc.*, No. 2:23-cv-07468, 2024 WL 5119108 at *5 (E.D.N.Y. Oct. 10, 2024). The legal sufficiency of the non-defaulting party's claims "is analyzed under the familiar plausibility standard enunicated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), aided by the additional step of drawing inferences in the movant's favor." *WowWee Group Ltd. v. Meirly*, No. 18-CV-706, 2019 WL 1375470, at *5 (S.D.N.Y. Mar. 27, 2019) (citations shortened); *see also Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (defendant's default is admission of all well-pleaded allegations against it); *CKR*

*Law LLP*, 544 F. Supp. 3d at 482-83 (because respondents are in default, the Court accepts as true all well-pleaded allegations in the petition).

**ARGUMENT**

**I.     The Court Should Enter a Default Judgment Against All Defendants**

Willfulness: The Defendants' default was certainly intentional. Defendants were properly served with the Summons and Complaint in this case pursuant to the Court's Order for Substitute Service. Defendants' failure to appear was fully expected as these Defendants similarly defaulted in *Atlantic* as well as a similar copyright case in Ohio, *OCLC, Inc. v. Anna's Archive et al.*, 24-cv-144 (S.D. Ohio) (Clerk's Entry of Default, ECF No. 39). Defendants make clear in their public statements that they are aware their conduct is illegal and they intend to evade the legal consequences of their actions as long as possible. Compl. ¶ 54 (Defendants admit they are "at high risk of being arrested" and are therefore "very careful not to leave any trace"). The Defendants' stated defiance of the legal system together with their failure to respond to service demonstrates the willfulness of their default. Defendants' refusal to participate in this action in any respect is sufficient to demonstrate the willfulness of its default. *See, e.g., All-Star Marketing Grp., LLC v. Media Brands Co., Ltd.,* 775 F. Supp. 2d 613, 621 (S.D.N.Y. 2011) ("willfulness may be established by a party's default because an innocent party would presumably have made an effort to defend itself") (citation omitted).

Defenses: Having failed to answer or otherwise appear, Defendants cannot establish that they have not presented any meritorious defenses to Plaintiffs' claims. *See, e.g., Kelly Toys Holdings, LLC v. alialialiLL Store,* 606 F. Supp. 3d 32, 49 (S.D.N.Y. 2022).

Prejudice: As Defendants have failed to respond notwithstanding Plaintiffs' diligent efforts to prosecute their claims, Plaintiffs would certainly be unfairly prejudiced if denied a default judgment because "there are no additional steps available to secure relief in this Court." *G&G*

6

*Closed Cir. Events, LLC v. Jimenez*, No. 20 Civ. 7489, 2021 WL 11586165, at *5 (S.D.N.Y. Nov. 12, 2021).

## II.     Plaintiffs' Allegations Establish Defendants' Liability

Plaintiffs have alleged sufficient, plausible facts to establish Defendants' liability for direct copyright infringement. A claim of direct copyright infringement requires "(1) ownership of a valid copyright and (2) unauthorized copying or a violation of one of the exclusive rights afforded copyright owners pursuant to the Copyright Act." *UMG Recordings, Inc. v. Escape Media Grp., Inc.*, No. 11 Civ. 8407, 2014 WL 5089743, at *19 (S.D.N.Y. Sep. 29, 2014) (citing *Twin Peaks Prods., Inc. v. Publishing Int'l, Ltd.*, 996 F.2d 1366, 1372 (2d Cir. 1993)). Plaintiffs have sufficiently alleged both elements.

Plaintiffs allege they own or control the copyrights in the Works in Suit listed in Exhibit A to the Complaint and each of those works is registered with the U.S. Copyright Office. Compl. ¶¶ 34, 38. Registration with the U.S. Copyright Office creates a statutory presumption that the copyrights are valid. *See Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 109 (2d Cir. 2001). Exhibit A to the Complaint identifies the Works in Suit, their respective U.S. Copyright Registration number, and the specific Plaintiff that owns or controls the copyright. Compl. Ex. A.

Plaintiffs have also shown that Defendants infringed their works within the three year statute of limitations. Compl. ¶ 41 n.18. Defendants list on their Website the dates on which they downloaded various datasets. Defendants re-copied the contents of Libgen and Z-Library, from which Defendants obtained many of Plaintiffs' works, see *id.*, most recently in January and February, 2026. Howell Decl. ¶ 15. Plaintiffs have also collected evidence that Defendants have not merely copied but also distributed the files available on the Website. Plaintiffs downloaded from Defendants' Website two Works in Suit from each Plaintiff on March 3, 2026, demonstrating the unlawful distribution of the specific Works in Suit. Howell Decl. ¶ 16. Defendants also list below

each copy of a given work the "Stats" associated with the file including any downloads made by third-party users in the prior 30 days. For example, one file containing the work discussed in Plaintiff's Complaint ¶ 44, *Innocent* by Scott Turow, was downloaded 25 times from April 5, 2026 through the present. Howell Decl. ¶ 17. Accordingly, the Plaintiffs have alleged sufficient facts to establish Defendants' liability for direct copyright infringement.

III.    **The Court Should Award Maximum Statutory Damages**

A.  **The Defendants' Infringement Is Willful**

Copyright plaintiffs can elect to recover actual or statutory damages any time before final judgment. 17 U.S.C.§ 504(c)(1). Plaintiffs hereby elect statutory damages on their direct liability claim. A court may award statutory damages in any amount from $750 to $30,000 per infringed work, "as the court considers just." *Id.* Where a court finds willful infringement, it "in its discretion may increase the award of statutory damages to a sum of not more than $150,000.00." *Id.* § 504(c)(2). Willfulness in the context of statutory damages for copyright infringement "means that the infringer either had actual knowledge that it was infringing the plaintiffs' copyrights or else acted in reckless disregard of the high probability that it was infringing plaintiffs' copyrights." *UMG Recordings, Inc. v. MP3.com, Inc.,* 2000 WL 1262568, at *4 (S.D.N.Y. Sep. 6, 2000).

The Court should exercise its discretion to award maximum statutory damages both to compensate Plaintiffs and to punish and deter Defendants' egregious misconduct. The Court should impose the maximum statutory damages of $150,000 for each of the 130 Works in Suit for a total of $19,500,000.[3] 17 U.S.C. § 504(c)(2). This Court has already found these Defendants to have willfully infringed the plaintiffs' works in *Atlantic* on similar facts. *See Atlantic*, Default Judgment,

---

[3] Every Work in Suit listed in Exhibit A to the Complaint was registered significantly before Defendants first copied the works. Howell Decl.¶ 11. Accordingly, all of these works are eligible for an award of statutory damages. See 17 U.S.C.§412.

ECF No. 41. Other courts have found willfulness where the defendant operated websites devoted to selling pirated copies of plaintiffs' works. *See, e.g., Cengage Learning, Inc. v. Nguyen*, No. 1:20-cv-00769, 2022 WL 18231654, at *4 (S.D.N.Y. Nov. 21, 2022). Moreover, copyright infringement is deemed willful by virtue of a defendant's default. *See Stokes*, 681 F. Supp. 3d at 238 (citing cases); *All–Star Mktg. Grp., LLC,* 775 F. Supp. 2d at 621-22.

### B. All Six Factors Favor an Award of Maximum Statutory Damages

Having established that Defendants' conduct is willful, the Court may award damages up to $150,000 per work infringed. Where a defendant has acted willfully, "a statutory award should incorporate not only a compensatory, but also a punitive component to discourage further wrongdoing by the defendants and others." *Malletier v. Carducci Leather Fashions, Inc.,* 648 F. Supp. 2d 501, 504 (S.D.N.Y. 2009). In considering how to determine the appropriate award of statutory damages, courts consider six factors: "(1) the infringer's state of mind; (2) the expenses saved and profits earned by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence; and (6) the conduct and attitude of the parties." *Bryant v. Media Right Productions, Inc.,* 603 F.3d 135, 144 (2d Cir. 2010). These factors all weigh strongly in favor of the maximum award of $150,000 for each of the 130 Works in Suit for a total of $19,500,000.

The first factor—the state of mind of the defendant—supports maximum statutory damages. Plaintiffs have already established Defendants' default, which is sufficient to show willfulness and general bad faith. Defendants' willfulness goes well beyond their default. Defendants have bragged about their conduct and made clear their knowledge of the illegality of their actions. *See supra* at 6. Defendants admit their conduct "deliberately violate[s] the copyright law in most countries." Compl. ¶ 3. Defendants' obvious disdain for the judical process and their continued infringement in the face of multiple lawsuits demonstrates their improper intent. *Stokes*, 681 F. Supp. 3d at 240.

9

The second and third factors—expenses saved and profits earned by the infringer, and the revenue lost by the copyright holder—also weigh in favor of a maximum statutory damage award. Defendants have profited substantially by soliciting "donations" from users in amounts up to $100 per month. Compl. ¶ 51. Users wanting high-speed access to the copyrighted works can reportedly obtain that service at a cost of $200,000. Compl. ¶ 53. Various AI companies have obtained or expressed interest in the Anna's Archive database as training material for their large language models. *See Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1041 (N.D. Cal. Jun. 25, 2025) (noting Meta downloaded Anna's Archive for Llama); *Nazemian v. NVIDIA Corp.*, No. 24-cv-01454, 2025 WL 3485154 at *1 (N.D. Cal. Dec. 4, 2025) (noting NVIDIA expressed interest in Anna's Archive); *see also Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007, 1015 (N.D. Cal. 2025) (noting Anthropic downloaded millions of books from other Notorious Pirate Sites). Many enterprise users have likely paid significant amounts to Defendants for high speed access to the archive. The Defendants have also saved significant expenses by "[bearing] none of the costs of creating any of the copyrighted works." *Cengage,* 2022 WL 18231654, at *4.

Conversely, Plaintiffs obviously suffer significant damage when their works are stolen and given away without compensation. As an initial matter, it is important to note that Plaintiffs sued on 10 works each for the sake of efficiency but that is obviously a tiny fraction of the works owned or controlled by the Plaintiffs and that have been infringed by Defendants. Compl.¶ 34. A search for each Plaintiffs' works on the Website resulted in more than 500 files, which appears to be the maximum for any single search query. Howell Decl. ¶¶ 12-14. Plaintiffs believe Defendants have likely copied and distributed the majority of their literary works.

The Publishers' catalogs represent some of the most academically important and commercially successful books in circulation today. Compl. ¶¶ 35-36. Numerous courts have recognized the value of these Publishers' copyrights. *See Hachette Book Grp., Inc. v Internet*

*Archive*, 115 F.4th 163, 174 (2d Cir. 2024) (discussing market for trade publications); *Pearson Educ., Inc. v. Najji*, No. 21-CV-3486, 2024 WL 4350467, at \*7 (S.D.N.Y. Feb. 13, 2024) ("Plaintiffs' copyrights … have high value because Plaintiffs are among the leading higher education publishers") (citing cases). When Defendants copy and distribute Plaintiffs' literary works without authorization, not only do Plaintiffs lose the individual sales of those works but the presence of a free source of content depresses the entire market for those titles. If consumers can download copies of the Plaintiffs' works without payment, consumers have no incentive to purchase legitimate copies. Compl. ¶¶ 57-60. *See Hachette*, 115 F.4th at 190 (digital copies of books usurp the market for the originals because "it is difficult to compete with free"). This problem is particularly accute given Defendants' recent efforts to market the database to AI companies. The contents of pirated troves of literary works like Anna's Archive is clearly of significant interest to AI developers who can obtain these works from Defendants instead of negotiating reasonable license fees with the Plaintiffs. Finally, Plaintiffs also lose control over the way their works are exploited, which does immeasurable damage to Plaintiffs and their authors. Compl. ¶ 59.

While the total harm caused by Defendants' illegal conduct cannot be determined with certainty, that fact does not diminish the weight of these facts in the determination of statutory damages. *See, e.g., Cengage,* 2022 WL 18231654, at \*4; *Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*, 826 F. Supp. 2d 619, 631 (S.D.N.Y. 2011) (awarding maximum statutory damages despite limited record of infringer's profits).

The fourth factor—deterrent effect on Defendants and third parties—also favors maximum statutory damages. "[C]ourts have repeatedly emphasized that defendants must not be able to sneer in the face of copyright owners and copyright laws." *Cengage*, 2022 WL 18231654, at \*5 (citing cases). This case involves an intentional, coordinated plan by Defendants to illegally obtain copies of copyrighted works and distribute them through their Website. A maximum statutory damages

11

award for deterrent purposes is particularly appropriate where, as here, Defendants engaged in "coordinated, flagrant, and extensive copyright infringement." *Cengage Learning, Inc. v. Bhargava,* No. 14 Civ.3174, 2017 WL 9802833 at *5 (S.D.N.Y. Aug. 22, 2017) (large award appropriate to "act as a specific deterrent to the [defendants] and a general deterrent to other like-minded infringers").

The fifth and sixth factors—the infringer's cooperation in providing evidence concerning the value of the infringing material and the conduct and attitude of the parties—also both support awarding maximum statutory damages. Defendants have not participated in this case at all, and certainly have not cooperated in providing evidence. A defendant's "default and subsequent silence shows a lack of cooperation in determining damages." *Hollander Glass Tex., Inc. v. Rosen-Paramount Glass Co.*, 291 F. Supp. 3d 554, 559 (S.D.N.Y. 2018). Defendants' failure to appear has frustrated the Plaintiffs' ability to seek redress and for the Court to adjudicate the issues in this case on a complete record. Moreover, Defendants' infringing conduct has continued despite this and several other cases against them. Conversely, the Plaintiffs pursued their claims in good faith and have diligently prosecuted this action to protect their rights.

In sum, all six statutory factors weigh in the Plaintiffs' favor. This Court has already found Defendants acted willfully in the related *Atlantic* case and awarded maximum statutory damages based on similar conduct. *Atlantic*, ECF No. 41. Indeed, while the facts presented in *Atlantic* were atrocious, this case presents just as egregious a scenario. Defendants' business is ***primarily dedicated to the reproduction and distribution of literary works***, as they proclaim proudly on the top of their Website. The precise number of books and papers they have copied is used as a tagline under the name Anna's Archive on the Website. Of course Defendants are not referring to just any books and papers but specifically those protected by copyright, because "legal entities . . . take good care of [preserving materials in the public domain]". Compl. ¶ 42. Defendants have been engaged

12

in this business for several years and their infringements continue unabated. Indeed, Defendants have expressed the goal of expanding the reach of their piracy to large scale users such as AI companies. Several AI developers have already downloaded the contents of Anna's Archive to train their models. *See supra* at 10.

The Court should award maximum statutory damages to Plaintiffs here. This result is amply supported in other cases of willful copyright infringment. *See, e.g., Pearson*,  2024 WL 4350467, at *7 (magistrate recommendation of maximum statutory damages), *report and recommendation adopted*, 2024 WL 4354822 (S.D.N.Y. Sept. 30, 2024); *Cengage*, 2022 WL 18231654, at *5 (maximum statutory damages of $150,000 per infringed work awarded); *Hounddog*, 826 F. Supp. 2d at 631(same); *McCurry v. Accessory Network Group, LLC*, No. 1:15-CV-09779, ECF Nos.  35 and  36,  (S.D.N.Y.  2019) (same).

## IV.    The Court Should Enter Plaintiffs' Proposed Permanent Injunction

Pursuant to Federal Rule of Civil Procedure 65(d), the All Writs Act, 28 U.S.C.§1651, and this Court's inherent equitable powers, Plaintiffs also request that the Court permanently enjoin Defendants from further infringing conduct and enter their Proposed Default Judgment filed concurrently herewith.

The Court may enter an injunction because Plaintiffs have a statutory basis for relief and the prerequisites for the issuance of an injunction have been met. *Cengage*, 2022 WL 18231654, at *6. Plaintiffs' claim arises under the Copyright Act which authorizes courts to issue a final injunction. *See* 17 U.S.C.§502(a). Furthermore, as set forth below, Plaintiffs have shown irreparable injury, that remedies at law are inadequate to compensate for that injury, that the balance of hardships weighs in their favor, and that the public interest would not be disserved by a permanent injunction. *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

First, in copyright infringement cases, courts "routinely find the harm suffered by plaintiffs

13

. . . to be 'irreparable' on the theory that lost sales or diminished reputation can be difficult if not impossible to measure." *Cengage*, 2022 WL 18231654, at \*6. Such is the case here, as Defendants' widespread infringement materially interferes with Plaintiffs' right to control their copyrights. *See WPIX, Inc. v. ivi, Inc.*, 765 F. Supp. 2d 594, 621 (S.D.N.Y. 2011), *aff'd*, 691 F.3d 275 (2d Cir. 2012) (recognizing harm caused by loss of control of copyrighted works). Second, Anna's Archive is a Notorious Pirate Site whose entire business model is premised on unlawfully copying and distributing books and papers. There is thus a significant threat that Defendants will engage in future infringement, which supports that monetary damages would be inadequate. *See Broadcast Music, Inc. v. Prana Hospitality, Inc.,* 158 F. Supp. 3d 184, 195 (S.D.N.Y. 2016) ("Courts in this Circuit have consistently found monetary damages inadequate where the defendant poses a significant threat of future infringement.") Indeed, Defendants' soliciting AI companies and other enterprise users to pay for high speed access to the archive represents a significant additional threat to Plaintiffs' business. Third, the balance of hardships clearly weighs in Plaintiffs' favor. Plaintiffs face substantial hardships from Defendants' misconduct described above, while Defendants cannot be harmed by requiring them to comply with the law. *See id.* at 196; *WPIX*, 765 F. Supp. 2d at 621. Fourth, the public interest would be served by issuance of a permanent injunction because the public "has a compelling interest in protecting copyright owners' marketable rights to their work." *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012).

**<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion for Default Judgment and enter judgment in Plaintiffs' favor and against Defendants in the form of the [Proposed] Default Judgment filed concurrently herewith.

Dated: May 7, 2026

Respectfully submitted,

*/s/Matthew J. Oppenheim*
Matthew J. Oppenheim
Keith Howell
**OPPENHEIM + ZEBRAK, LLP**
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20016
Phone: (202) 480-2999
matt@oandzlaw.com
khowell@oandzlaw.com


Jennifer L. Pariser
**OPPENHEIM + ZEBRAK, LLP**
461 5th Avenue, 19th Floor
New York, N.Y. 10017
Phone: (212) 951-1156
JPariser@oandzlaw.com

*Attorneys for Plaintiffs*

15

## L.R. 7.1(C) CERTIFICATE OF COMPLIANCE

I, Keith Howell, hereby certify that according to the word count of the word-processing program used to prepare the foregoing document, and exclusive of the portions of it that are excluded by Local Rule 7.1, there are 4,624 words in the document. This brief complies with Local Rule 7.1(c).

Dated: May 7, 2026                        Respectfully submitted,

*/s/Keith Howell*
Keith Howell
**OPPENHEIM + ZEBRAK, LLP**
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20016
Phone: (202) 480-2999
khowell@oandzlaw.com

16